JACOB HERZOG, Plaintiff, *v.* ABRAHAM CLINE and Others,
Defendants.

ABRAHAM KIMBERG, Plaintiff, *v.* ISRAEL WASSERMAN and Others,
Defendants.

Supreme Court, Bronx County, November 29, 1927.

**Trade unions — strikes — application for temporary injunctions restraining labor unions from posting pickets in front of plaintiffs' premises and otherwise executing strike orders — strike was called because plaintiffs refused to discharge clerks affiliated with rival labor union — methods employed by defendant unions exceed bounds sanctioned by law — temporary injunctions granted.**

Temporary injunctions, in actions arising out of a labor dispute, will be granted plaintiffs restraining defendant unions from posting pickets in front of plaintiffs' premises and otherwise interfering with plaintiffs' business, where it appears that the only grievance defendant labor unions have against plaintiffs is that plaintiffs have refused to discharge clerks affiliated with a rival labor union, particularly where the methods employed by the unions exceed the bounds sanctioned by law.

One of the defendant unions, though not claiming any direct interest in the controversy, will be enjoined irrespective of its motives, where no lawful reason or purpose for a strike is shown.

Where there are several unions in a trade and an employer exercises his right to hire members of one of them rather than of the others, he should not be subject to strikes solely because of his choice.

MOTIONS by plaintiffs for temporary injunctions.

*Kopp, Markewich & Null*, for the plaintiffs.

*Henry O. Kahan*, for the defendants.

CALLAHAN, J. These are two motions for temporary injunctions in actions arising out of a so-called labor dispute. The plaintiffs herein are grocers conducting small stores in the borough of The Bronx, New York city. Each plaintiff hires one clerk. The defendants may be divided into two groups, the officers and members of one unincorporated association known as the Retail Grocery and Dairy Clerks' Union of Greater New York No. 1232, and members of a second unincorporated membership association known as the United Council of Working Class Housewives.

The plaintiffs in the year 1926 entered into written contracts with the defendant union, whereby they agreed to hire none but members of the union as clerks in their stores for the ensuing year. At the time such agreements were made the defendant union was affiliated with an organization known as United Hebrew Trades, which appears to be an association of labor unions in turn affiliated with the American Federation of Labor. The United Hebrew Trades had issued a charter to the defendant union. In the summer of 1927 a quarrel arose in the defendant union. A member and a former delegate of defendant union complained to the United Hebrew Trades that some of the members of the union were communists. These members denied the charges, and asserted in turn that the man who made them was extorting money from grocers. As a result of this quarrel the United Hebrew Trades canceled the charter it had previously issued to the defendant union, and organized another retail grocery clerks' union, known as Retail Dairy and Grocery Clerks' Union of Greater New York of Local No. 338. Some members of defendant union, including the clerks employed by the plaintiffs, joined the new organization. Thereafter the officers of the defendant union went to the plaintiffs and endeavored to have these clerks discharged, complaining that the United Hebrew Trades had treated the defendant union unfairly and had unlawfully revoked their charter. On the refusal of the plaintiffs to discharge their clerks, a strike was declared against the plaintiffs.

Plaintiffs' stores have been constantly picketed for several months past. Signs to the effect that a strike is being carried on because the plaintiffs refused to employ union labor have been carried up and down on the sidewalk in front of the plaintiffs' premises. Members of the defendant union and of the defendant United Council of Working Class Housewives have been conducting this

picketing. Circulars have been distributed among the residents of the neighborhood requesting that such residents refrain from trading with the plaintiffs because the plaintiffs refused to employ real union labor. The defendant United Council of Working Class Housewives concedes that it has paid for these circulars and helped distribute them. There have been the arrests and the general turmoil that usually accompany picketing in labor disputes. The plaintiffs' business is being severely injured by the strike.

The right to strike or to picket the premises of an employer has been clearly defined by the Court of Appeals in the case of *Exchange Bakery & Restaurant* v. *Rifkin* (245 N. Y. 260). There the court pointed out that an effort to increase the numbers of the members of a union, or to unionize the employees of an entire trade or business, by the method of strike or picketing, was lawful, where the purpose of those conducting the strike or causing the picketing was to improve working conditions. A strike for such purpose would be lawful, even though that strike might result in some injury to an employer's business.

In the instant case it does not appear that the so-called strike or the picketing have been because of any complaint against existing conditions of workers in the retail grocery business. It is not claimed that the United Hebrew Trades, or the new union it has formed in this trade, is not sincerely endeavoring to represent the workers, or that the working conditions of the clerks will be any better cared for by the defendant union than by the new one. There is no claim that the new union is not a genuine labor organization, or that it is any more favorable to the interests of the employer than is the defendant union. It is frankly conceded that the cause of the present dispute is a quarrel between the defendant union and the United Hebrew Trades over the cancellation of the charter of the defendant union by the United Hebrew Trades. No claim is made in the answer, or in the defendants' answering papers, that any single economic betterment to the workingman is to be brought about by this strike. If such were the object of the present strike, a different question might be presented.

Of course no union or organization is entitled to a monopoly in any field of labor. The courts of this State have sustained strikes brought by one union to increase its membership when there were other unions in the same trade where the striking employees contended that their union would bring about better conditions for the workingman than would the other unions. (*National Protective Assn. of Steamfitters & Helpers* v. *Cumming,* 170 N. Y. 315.) Here, however, the only grievance that the defendant union has is as to its treatment by another union and not as to the treat-

ment of the employees by the employer.    It is true that the defend-
ant union claims that the plaintiffs broke contracts made with it.
These contracts expired, however, several months ago and the so-
called strike herein has continued ever since.    The courts are the
proper forum to redress the legal wrong, if any has been committed
by the United Hebrew Trades against the defendant union.    Such
wrongs should not be redressed by a strike, injuring those con-
ducting a business in which there is no claim that there are
economic conditions to be improved.  ·

Where there are several unions in a trade and an employer
exercises his right to hire members of one of them rather than of the
others, he should not be subject to strikes solely because of his
choice.    If he were to be subject thereto for such reason alone,
there might be continuous strikes against him, with no object other
than to determine the survival of the " strongest " union.    The
employer himself might not survive.    Such strikes in my opinion
would be deemed in law to be based on malice, and malicious
strikes are unlawful.

To the reasons above stated for the issuance of an injunction
herein the court might add the further one that the statements
being made by the defendants that the plaintiffs are inimical to
union labor, and that they refuse to hire employees who are affiliated
with labor unions, are false and dishonest.    Again, abundant
evidence is given in the moving papers that the methods pursued
by the defendants in conducting the picketing complained of appear
to clearly exceed the bounds sanctioned by law in carrying on such
picketing.    (See *Exchange Bakery & Restaurant* v. *Rifkin, supra.*)

The defendants United Council of Working Class Housewives
do not claim any direct interest whatever in this controversy.
They state that they are an organization consisting of a group of
housewives who are interested in labor conditions, and that they
make it a practice to give financial aid to unions whose activities
come to their attention and with whom they are in sympathy.
There is no claim that they know of any labor condition involved
here that requires betterment.    They do not state why they
sympathize with the defendant union rather than with the newly
created union of the United Hebrew Trades.    If these women were
assisting in a strike lawfully conducted by some labor organization,
it might be unimportant to inquire as to the reason for their activities.
Where, as here, however, no lawful reason or purpose for such
a strike is shown, their acts will be enjoined irrespective of their
motives.

The political beliefs or principles of these defendants are not
involved here, nor is there any question of the right of free speech

or assemblage. The question that is involved is the right to injure another's business by striking or picketing. The law of this State has very clearly indicated that such an injury is justified only where some lawful purpose, such as the improvement in the conditions of the workingman, exists. When called upon to explain their conduct, those carrying on or aiding a strike should at least be able to justify their acts by proof that they seek such an end.

Motion for a temporary injunction will be granted. Settle order on notice.